*Collier vs. Gamble, use of McCabe, &c.*

## COLLIER vs. GAMBLE, use of McCabe, &c.

1. The only covenant implied by our statute from the words "grant, bargain and sell," which runs with the land, is the covenant for further assurance. The word "assigns," as used in the statute, is limited to that covenant.

2. An action cannot be brought in the name of an assignee for the breach of the other covenants.

3. The statutory covenant being not simply a covenant of seizin, but of seizin of an indefeasible estate in fee simple, the measure of damages is not in all cases the purchase money with interest. When the vendor was actually seized—but of a defeasible estate—the damages should be merely nominal, until the estate has been actually defeated.

## APPEAL from St. Louis Court of Common Pleas.

BATES, *for Appellant, insists:*

1. The demurrers to the pleas in the court below, were all wrong, and ought, every one of them, to have been overruled.

2. The receipted account current between Collier and Gamble was improper and irrelevant testimony, and ought to have been rejected.

3. The exclusion from the jury of the assignment of the covenants sued on, by Gamble to Mrs. Lawless's trustee, was erroneous.

4. The instruction volunteered by the court to the jury was illegal and wrong.

5. The instruction moved by the defendant was legal and proper and ought to have been given.

6. In view of the manifold errors of law, and fact apparent on this record, the verdict ought to have been set aside and a new trial granted.

HAMILTON, *for Appellee, insists:*

In this case, we submit that the only question necessary to be discussed, arises upon the demurrer to the second plea.

The breach is, that the defendant was not seized of an indefeasible estate of inheritance in fee simple. This plea is that he was seized of an indefeasible estate of inheritance in fee simple.

As the recent act of the Legislature seems to have done away with all causes of special demurrer, (except those for duplicity, for the omission to make profert when necessary, which are now converted into substantial defects,) we do not see how we can hold this judgment.

NAPTON, J., *delivered the opinion of the Court.*

This was an action of covenant brought by Gamble, to the use of McCabe, trustee of Virginia Lawless. The declaration assigned a breach

of the covenant of seisin created by the words "grant, bargain and sell," in a deed from George Collier, the defendant, to Hamilton R. Gamble, the plaintiff, made on the 8th Nov., 1834, and conveying a tract of land in St. Louis, containing about twenty-four acres. Defendant pleaded, 1st, *non est factum*; 2nd, that defendant was seized of an indefeasible estate in fee simple, &c. at the time, &c.; 3rd, that the plaintiff had conveyed to one Mills, with covenant of general warranty; and that said Mills, and every one claiming under him, had ever since been in peaceable and undisturbed possession; and said plaintiff had never been compelled to pay any damages, by reason of any disturbance to said Mills, &c., or any defect of title, &c. To the two last pleas, plaintiff demurred, and the demurrer was sustained. Defendant then, by leave of court, filed an additional plea, to wit: that at the time, &c., he was seized of an indefeasible estate in fee simple; end that he, at the same time, was so seized in virtue of a valid conveyance of the said lands from one McAllister and wife, who were, at the time of making the conveyance, the lawful owners and possessors of said land, &c. A demurrer to the additional plea was also sustained.

It may be stated here, that these two actions, originally brought on two deeds from Collier to Gamble, and after the pleadings in the two actions were made up, being precisely the same in each, they were, by order of the court, consolidated. The plaintiff gave in evidence two deeds from Collier and wife to Gamble, dated 29th September, 1831, and the 8th November, 1834, for some lands adjoining St. Louis. The consideration of the one was $800, and the other $1838. The plaintiff also gave in evidence an account current between Collier and Gamble, showing the receipt of the purchase money by the former. It was admitted that Gamble had expended $4500 in improvements, after his purchase from Collier.

The defendant gave in evidence a deed from Gamble to Mills for this land, in consideration of $12,000, containing a covenant of general warranty by Gamble. It was admitted by the plaintiff, that ever since said purchase by Mills, he, and those claiming under him, had held undisputed possession of the land conveyed.

Defendant then offered in evidence the following paper: "Know all men by these presents, that whereas, George Collier and wife, by two deeds, one dated 29th September, 1831, and the other 8th November, 1834, conveyed to H. R. Gamble several portions of land, which, together, form one tract of forty acres, bounded, &c.; and the said Collier, by said deeds,

covenanted with the said Gamble for the title to said (land:) and whereas, the said land is embraced in a tract of 350 arpens claimed by the heirs of Major Amos Stoddard, deceased, which claim of the heirs of said Stoddard is adverse to the title conveyed by said Collier to said Gamble : and whereas, the heirs of said Stoddard have conveyed to Luke Edward Lawless one undivided fifth part of said tract of 350 arpens, and the said Lawless has conveyed said undivided fifth part of said tract of 350 arpens to Gamble, now therefore, in consideration of the premises, the said Gamble does, by these presents, assign and transfer unto Edmund H. McCabe, in trust for Mrs. Virginia Lawless, all recourse which he is entitled to against the said Collier, upon the covenants, express or implied, in the said two deeds, if the title held under and derived from the said Major Amos Stoddard shall prove to be a better title to said land than that which was conveyed to said Gamble by said Collier. And the said Gamble, by these presents, gives to the said McCabe, trustee as aforesaid, full power and authority to use his name in any proceeding or suit which may be necessary to enforce the claim against the said Collier, if the said title under the said Stoddard shall prove to be the better title; and any recovery in said suit or proceeding shall be for the benefit of the said Virginia Lawless. In testimony whereof, the said Hamilton R. Gamble has hereto set his hand and seal this 16th March, 1842. H. R. Gamble. *Seal.*" At the foot of this writing, was a statement by Collier consenting to be held responsible to McCabe on his covenant to Gamble, as he would have been to Gamble. The admission of this document, which was produced by a *subpœna duces tecum* from L. E. Lawless, was objected to by the plaintiff, and it was excluded by the court.

The court instructed the jury that the measure of damages was the consideration money, with interest. The court was requested by the defendant to instruct the jury, that if the plaintiff had voluntarily placed himself in such situation that he could not convey back to the defendant the land conveyed to him by the deeds containing the covenants sued on, he could not recover the whole consideration money, with interest, &c. But the court refused to give this instruction.

The plaintiff had a verdict and judgment for $4,628 32. A motion for a new trial was made and overruled, and the several opinions of the Court of Common Pleas excepted to.

1. The demurrer to the second plea was improperly sustained. The breach assigned in the declaration was, that the defendant was not seized of an indefeasible estate in fee simple, and the plea avers that he was

so seized. If the breach be well assigned, the plea must be good.—— Whether the assignment of the breach be sufficient, will depend upon the character of the covenant, about which we shall speak presently.—— If the covenant be a mere covenant of seisin, the breach is well enough; but if the covenant be not only a covenant of seisin, but in effect a covenant against incumbrances, there must then be a specific allegation of an incumbrance or paramount title. 2 Kent Com., 1st ed., 466.

2. The third plea presents the question whether our statutory covenant of seisin is merely a personal covenant, as it was understood to be at common law, or is to be construed as a covenant real, running with the land. The use of the word "assigns," in the statute, is relied on as a proof that the Legislature, in this respect, designed to alter the common law. The act says, that the words "grant, bargain and sell" shall be construed to mean certain covenants therein specified on the part of the grantor, for himself and his heirs, to the grantee, his heirs and *assigns*. These covenants are, first, of seisin, &c.; second, against incumbrances suffered by the grantor; and, third, for further assurance. The two first, are, by the rules of the common law, personal covenants, and are broken, if broken at all, the moment they are made. From their very nature, they are incapable of future violation. As a consequence of this, they did not run with the land, but the remedy upon them being complete, so soon as they were made, was confined to the grantee and his representatives. The third covenant mentioned in our statute, (that for further assurance,) though not strictly a covenant real, at common law, is a covenant running with the land, like those for general warranty and quiet enjoyment.

It will not escape the observation of any one who examines the mutations which this provision of our statute has undergone, since its first introduction in 1804, that these changes have been material, both in form and substance. A section which, in 1804, was designed to provide, and no doubt did provide, a simple covenant against incumbrances suffered by the grantor, has been gradually, and, we must presume, intentionally, branched into two or three distinct covenants. At first, we had a covenant of seisin of an indefeasible estate in fee simple, freed from incumbrance suffered by the grantor, which only amounts to a covenant against such incumbrances as the grantor himself had made upon the estate conveyed. By slight alterations in the language, and very considerable changes in the punctuation, we have now from this root three branches; first a covenant of seisin generally; second, a covenant of seisin of an inde-

feasible estate, which embraces the former; and, third, a covenant against particular incumbrances. The covenant against encumbrances suffered by the grantor, is apparently superfluous; but we may at least infer from these various changes, however unscientifically made, that the Legislature designed to make "assurance doubly sure!"

The words "heirs and assigns" have reference to all three covenants specified in the statute; and, as one of them, the covenant for further assurance was a covenant running with the land, it was proper to use the word "assigns" when speaking of those who would be entitled to the benefit of this covenant. Its application, however, need not be extended to the two covenants of seisin and for freedom from incumbrances. There is nothing in the grammatical construction of the sentence which requires such an interpretation. It is not reasonable to suppose that an attempt to change the settled construction of a covenant which had been used by conveyances for centuries, would be made in so obscure and indirect a method.

It may be observed, that the words "heirs and assigns," as well as the terms "heirs, executors and assigns," used by conveyances, and when found in our statute book, are usually intended to designate the individual who is supposed to *represent* the party interested, whether he be heir, or executor, or assign. Though all are named, only one is intended in each specified case. Thus, where a covenant is made with a man, his heirs, executors and assigns, if there be a breach in the time of the heir, he must bring the action and not the executor.— Smith vs. Simonds, Comb, 64. And where there was a covenant for quiet enjoyment, and the heirs and assigns only were named, it was still held that the executor must bring the action for a breach of the covenant occurring during the life time of the testator. Lucy vs. Levington, 1 Vent. 175; Chapman vs. Darlton, Plow., 284.

The case of Kingdon vs. Nottle, (1 Maull & Selw., 355; 4 M. & Selw. 53) has been supposed to maintain a different doctrine from the one generally received in this country, in relation to to the construction of a covenant of seisin, In that case, the covenant was for a good title to convey, and the Court of K. B. held that the executor could not recover upon a breach of this covenant, inasmuch as the testator had sustained no damage in his lifetime. This proceeded upon the idea entertained by the court that there was a *continuous* breach from the time the covenant was made until the eviction by paramount title took place, and as the latter occurred after the death of the covenantee, his heir was the pro-

per person to sue. Chancellor Kent thinks the reasoning upon which the court based its opinion too refined to be correct; (4 Kent C., 459) and and it is at least certain that the entire current of authorities in the United States is adverse to this decision.

We shall conclude, therefore, that there is nothing in the phraseology of our statute which would authorize the covenant of seisin created by the words "grant, bargain and sell," to be regarded as a covenant running with the land, and that the word "assigns," used in the act, may be confined in its operation to the covenant for further assurance.

3. It follows, from the position we have above assumed, that the right to sue for a breach of the covenant of seisin is a mere chose in action, and therefore not assignable so as to authorize an action in the name of the assignee. An assignment of a covenant is not within our statute, which requires assignees to sue in their own name. Thomas vs. Coxe, 6 Mo. R., 506. This suit was therefore properly brought in the name of Gamble.

4. The Court of Common Pleas considered the measure of damages to be the purchase money and interest. This is the well established rule in breaches of the covenant of seisin. Marston vs. Hobbs, 2 Mass. R., 439; Bickford vs. Page, ib., 455; Caswell vs. Wendell, 4 Mass. R., 188; Staats vs. Teneyck, 3 Caine's R., 111; Waldo vs. Long, 7 John. R., 173; Bender vs. Fromberger, 4 Dall., 441; 4 Kent Com., 462. This rule has been adopted with the qualification that where the title to part only of the land has failed, the damages will be restricted to the part lost. Morris vs. Phelps, 5 John. R., 49. But the covenant which our statute declares to result from the words "grant, bargain and sell," is not a mere covenant of seisin. The latter is only broken when the grantor is not seized, and consequently no estate passes. In such cases, the only controversy which could arise in relation to the rule of damages, would be whether the actual value of the premises, at the time of bringing the action, or the value agreed upon by the parties at the time of the conveyance, should be the standard by which the jury should be guided. It would be manifest that, as no land passed by the deed, the grantee should at least get back all he had paid. But the covenant of seisin mentioned in our statute, is a covenant not only that the grantor is *seized,* but that he is seized of an *indefeasible* estate in fee simple. This covenant may be broken, where the grantor is seized, but is only seized of a *defeasible* estate. In this respect, it resembles the covenant against incumbrances. The existence of a paramount title, is a breach of our

statutory covenant; it is not necessarily so, if mere covenant of seisin. These covenants, then, being essentially different, the rule of damages must be different. The existence of a paramount title, whether it has been asserted or not, is a breach of the statutory covenant; and if, for such breach, the grantee is permitted to recover the consideration money and interest, he may get back the purchase money and retain possession of the land, under a title which is defeasible, but which may in fact never be defeated. In such cases, the reasonable rule is to recover nominal damages only, until the estate conveyed is defeated, or the right to defeat it has been extinguished. Prescott vs. Truman, 4 Mass. R., 627; Wyman vs. Ballard, 12 Mass. R., 302. This avoids the manifest injustice of permitting the plaintiff to recover the value of the land, and at the same time retain possession under a title which may never be disturbed, or whose defects may be remedied by the payment of an inconsiderable sum. It is the rule which prevails in the construction of covenants against incumbrances, and our statutory covenant of seisin, is in fact a covenant against incumbrances, as well as of seisin.

The other Judges concurring, the judgment is reversed, and the cause remanded.